Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT,
Hon. LOYAL C. KELLOGG,
Hon. ASAHEL PECK,
} *Assistant Judges.*

---

Sherburn R. Merrill and Ira A. Ramsey *v.* Joseph W. Cooper, Zilphia E. Blodgett et al.

[IN CHANCERY.]

*Parol Evidence. Mortgage. Homestead.*

B. owned a small farm which was mortgaged for three hundred dollars of the purchase money. After his death the commissioners in setting off the homestead, did not set off the whole farm as a homestead subject to the mortgage, but set off a piece for a homestead without regard to the mortgage, and left a piece, upon the theory that that would pay the mortgage debt and leave the homestead clear. This last piece was more than sufficient to pay the mortgage. The widow, as administratrix, obtained license to sell this part to pay debts, and advertised it for sale, " subject to the mort-

gage," sold it as advertised and used the same phrase in the deed. *Held,* that the words "subject to the mortgage," as used in the advertisement and deed, were of doubtful meaning, and susceptable of two interpretations, and parol evidence was admissible to show the sense in which they were used.

Sense in which the words "subject to the mortgage," were used in this case.

APPEAL from the court of chancery. The facts sufficiently appear in the opinion.

*William Hayward* and *Ossian Ray*, for the orators.

———— ———— for the defendants.

ALDIS, J. The defendants are the widow and heirs of Milo Blodgett, deceased. He in his life-time bought the farm, which he occupied at the time of his decease, of one Harris and gave a mortgage of it for the purchase money. The mortgage when he died amounted to about $300.——and being for the purchase money the homestead was subject to it. But in setting off the home-stead the commissioners dtd not set off the whole farm as home-stead subject to the mortgage, but set off a piece on the east side of the road for the homestead without regard to the mortgage and left a piece of 20 acres on the west side of the road upon the theory that that would pay the mortgage debt and leave the homestead clear. And this act of the commissioners in setting out of the homestead, has been acquiesced in by all parties without appeal.

The widow then obtained license from the probate court to sell the piece on the west side of the road to pay debts. She advertised it for sale " subject to the mortgage" and sold it so.

The purchaser now says, that "subject to the mortgage" means—that the piece on the west side of the road was subject to the mortgage just as the homestead was—and that both being subject to the mortgage, both should contribute their just shares to pay off the common burden—and for that purpose he brings this bill.

The widow insists that the phrase meant subject to the pay-

ment of the whole mortgage debt; that that was the real mean-ing of the advertisement and sale, and was so understood by all the parties present at the sale, and by these orators, and to prove this, has introduced parol testimony.

1. Is the parol evidence admissible?

It is a familiar principle of the law that where the language of a written instrument is of doubtful meaning and susceptible of two interpretations, parol evidence may be admitted to show the sense in which the doubtful language was used.   The phrase " subject to the mortgage," as used in the advertisement and deed seems to us to come within this class.   It might mean sub-ject to the payment of the whole mortgage debt; or, subject to contribute with the other lands mortgaged its just proportion to the payment of the mortgage debt.   In either case it would be subject to the mortgage.

2. The parol evidence being admissible, it then becomes our duty to determine by the light thus thrown upon the transaction what was meant by the term " subject to the mortgage."

The object of the sale we deem a fact ·of much significance. It was to relieve the homestead from the lien of the mortgage by selling the piece west of the road, and paying the mortgage debt with the proceeds.   This was made known to Mr. Ramsey—the widow advising with him about it as her legal adviser.   To hold the homestead subject to contribution would have defeated in a great part the object of the sale.   Hence Mrs. Blodgett's astonish-ment when Mr. Ramsey claimed she should contribute.   The testimony of Mr. Bedell, Mr. Harris, Mr. Cooper the auctioneer, Mr. Blodgett and Mrs. Blodgett the defendant make a decided balance of evidence over the testimony of Mr. Ramsey, Merrill and Holbrook.   The former witnesses testify at length and with minuteness as to all that was said at the time of the auction— that the mortgage though in reality about $319.00, was agreed to be called $300. and what was due above that sum Mrs. Blod-gett would pay, and the purchaser must pay that amount on the mortgage.   That the auctioneer refused to sell on the basis of requiring the estate or the administratrix to contribute to the mortgage; that there was much talk and dispute on this very

point, and that the auctioneer clearly stated that it was to be sold subject to the $300.

Mr. Merrill and Mr. Ramsey omit a great portion of what the other witnesses relate, and simply say that they asked the auctioneer to put in writing whether the mortgage would cover the whole farm or only that part west of the road, and he refused to put it in writing and said he should sell according to the advertisement, and then read it. It is obvious that this is but a very meager and imperfect account of what was said and done on the occasion, and that the most material points are wholly omitted by them.

The fact too, that the mortgage was fixed as being $300., when in reality it was for about $319., is wholly inconsistent with the idea that the homestead and the part then sold were to contribute to pay the whole. The widow would not pay the $19. and then her full proportion of the rest. That was more than she could in any event be compelled to pay.

The value of the land and the price bid corroborate the same view.

We all concur in considering that the parol evidence establishes beyond dispute, that the land west of the road was sold subject to the payment of $300. on the mortgage, and that from what was then said, the persons present ought to have clearly understood that such were the terms of sale.

The deed was given in the terms of the advertisement. We do not think either party intended thereby to relinquish their claims, or that Mrs. Blodgett can be regarded as thereby having acceded to Mr. Ramsey's claim;—on the contrary, the deed seems to have been drawn so as to keep alive rather than to put an end to the controversy.

These views sustain the decree of the chancellor, and we do not deem it necessary to examine other points which have been raised in the argument, and which this decision makes immaterial. Decree affirmed and the case remanded to the court of chancery.